UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SUE ELLEN VALERI,

                             Plaintiff,

       -against-

ANTHONY MARRACCINI, individually, EDWARD
LUCAS, individually, MARK DiGIACOMO,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                             Defendants.
-----------------------------------------------------------------x

08 Civ. ( )

**08 CIV. 5256**

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff SUE ELLEN VALERI, by her attorney JONATHAN LOVETT, ESQ., for her complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, resulting from Defendants' conduct as engaged in under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by reason of the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff SUE ELLEN VALERI is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Town/Village of Harrison, New York (hereinafter alternatively referred to as the "Town"). At the time of the events referenced *infra* two of Plaintiff's six children (one son and one daughter) attended the Louis M. Klein Middle School (hereinafter "Middle School") in the Harrison Central School District (hereinafter "District"). The Middle School has, over the years, lost a substantial number of faculty to cancer; a number of former Middle School students, currently enrolled in the District's High School, has also been diagnosed with cancer.

4. Defendant ANTHONY MARRACCINI (hereinafter "Marraccini"), who is sued in his personal and individual capacities only, at all times relevant to this complaint was a Captain in the Police Department (hereinafter "Department") of the Defendant Town/Village of Harrison. As such and by reason of the complete and deliberate abdication of responsibility for the administration of that Department by its Chief of Police, its Board of Police Commissioners and the Town Board, Marraccini has exercised plenary, unbridled, final administrative decision-making authority over the Department and its officers - - commanding his subordinates to routinely violate the civil rights of Town residents, financially rewarding those officers who carry out his unlawful directives and punishing those officers who, advocating obedience to the United States Constitution and their oaths of office, opposed him.

5. Defendant EDWARD LUCAS (hereinafter "Lucas"), who is sued in his personal and individual capacities only, at all times relevant to this complaint was a Detective in the Department who over the years has willingly carried out Marraccini's

only to be immediately countermanded by the Principal who instead ordered that Superintendent of Schools Louis Wool (hereinafter "Wool") be notified. The premises were not evacuated.

11. As a result of Alex' report to her, Plaintiff re-entered the Middle School, located her fourteen year old daughter and removed her from the premises as well.

12. Observing that there were no emergency services officials at the Middle School, Plaintiff contacted the local fire department and reported her observations out of concern for the health and safety of the school's children, faculty and staff. Firemen responded to the premises where Assistant Fire Chief Henry Mohr directed that, in light of the number of children vomiting and the foul odor, the building should be evacuated.

13. Mohr was then promptly overruled by Fire Chief Ralph Straface - - who in addition to being a member of the Fire Department was a full-time Head Custodian employed by the District and subject to control by Wool - - who, because of the Middle School's history of cancer took immediate action to suppress any public reports regarding the incident which he determined to cover-up.

14. Alex, covered in a rash from head to toe, vomiting, suffering from a fever in excess of 103 degrees and experiencing difficulty breathing was taken by Plaintiff to his treating physician who *inter alia* directed Plaintiff to ascertain from the District what substance had caused the foul odor in the Middle School - - information that would be of assistance in determining: i) what Alex had been exposed to; ii) whether he had suffered an allergic reaction to such a substance; and iii) what course of treatment might be best indicated.

15. As a result Plaintiff repeatedly contacted officials of the District, both by telephone and in writing, expressing her concerns and seeking information regarding the source of the foul odor - - only to be ignored as part of Wool's cover-up.

16. Believing that the District had an obligation to disclose the information she was seeking, not only for the medical treatment of Alex but for the health and safety of all of the Middle School children, faculty and staff who had been exposed to the foul odor, Plaintiff notified the County Health Department and *inter alia* the New York State Department of Environmental Conservation to express her concerns and secure their intervention.

17. With the calculated objective of deceiving the parents of Middle School children, averting any competent investigation of the May 29, 2007, events and insulating the District from exposure to justifiable litigation regarding its deliberate disregard for health and safety, Wool:

    a. Publicly, falsely announced that only two Middle School children had become sick as a result of the foul odor,

    b. Publicly, falsely announced that there was no health and/or safety risk for the children, faculty and/or staff attending the Middle School, and,

    c. Publicly threatened to have the person who expressed concerns regarding the events of May 29th and the cover-up pertaining to it prosecuted criminally, an objective with respective to which Wool enlisted Marraccini's knowing, active, and corrupt support.

18. Shortly thereafter Marraccini began repeatedly telephoning Plaintiff on her cellular phone and harassing her regarding her expressions of concern as referenced

5

*supra* [N.Y. Penal Law §240.30(1), Aggravated Harassment in the Second Degree]. In that connection he: i) interrogated her regarding those concerns without asking about her son's medical condition; ii) warned her, in response to Plaintiff's inquiry about what was being done to investigate the foul odor and the children's vomiting, that she did not realize what she was "getting into"; ii) threatened her, cautioning that she if she continued to pursue the issues she was going to be in "big trouble" [N.Y. Penal Law §135.60(4), Coercion in the Second Degree; N.Y. Penal Law §195.00(1), Official Misconduct]; iii) and advised her that he had to come to her home to speak with her. Out of fear Plaintiff stopped taking Marraccini's calls.

19. When Plaintiff's husband contacted Marraccini and instructed him cease calling Plaintiff, Marraccini directed Harrison Police Officer Gary Chiarella to make a series of telephone calls to Plaintiff's residence, speak to her children and repeatedly advise them that if Plaintiff did not return his calls she was going to be "in trouble" [N.Y. Penal Law §135.60(4), Coercion in the Second Degree; §240.30(1), Aggravated Harassment in the Second Degree]. Plaintiff's husband returned Chiarella's calls and was told by Chiarella: i) that Plaintiff's public expression of concern regarding the May 29th incident "needs to end now"; and ii) that if it does not, Plaintiff was going to be arrested [N.Y. Penal Law §195.00(1), Official Misconduct; §135.60(4), Coercion in the Second Degree].

20. Lucas, at Marraccini's directive, then telephoned Plaintiff's husband and advised that if Plaintiff did not surrender herself at Police Headquarters she would be arrested in Town and publicly handcuffed [N.Y. Penal Law §195.00(1), Official Misconduct; §135.60(4), Coercion in the Second Degree]. As to her alleged crime, Lucas

6

26. As a proximate result of Defendants' conduct Plaintiff has been caused to suffer: irreparable impairment of her rights as guaranteed by the First Amendment to the United States Constitution; pecuniary losses; public humiliation; public shame; public ridicule; public degradation; public stigmatization; public embarrassment; anxiety; emotional upset; fear; and she has otherwise been rendered sick and sore.

### AS AND FOR A CLAIM

27. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "26", inclusive.

28. Under the premises Defendants violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding against all Defendants such compensatory damages as the jury may determine,

    c. Awarding costs and reasonable attorney's fees, and,

    d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       June 7, 2008

Jonathan Lovett, Esq. (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

8