UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SUE ELLEN VALERI,

                              Plaintiff,

      -against-                                    08 Civ 5256 (CS)

ANTHONY MARRACCINI, individually, EDWARD
LUCAS, individually, and MARK DiGIACOMO,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                              Defendants.
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

                                                LOVETT & GOULD, LLP
                                                Attorneys for Plaintiff
                                                222 Bloomingdale Road
                                                White Plains, New York 10605
                                                (914) 428-8401

## PRELIMINARY STATEMENT

Plaintiff Sue Ellen Valeri commenced the instant action due to the unlawful chilling of her First Amendment rights which chilling resulted from the jointly engaged-in conduct taken by Defendants while acting under color of the laws of the State of New York (Complt. ¶1).

Defendants move pre-discovery to dismiss the Complaint pursuant to FRCP Rule 12(b)(6). For the reasons set forth *infra*, Defendants' motion should be denied.

## BACKGROUND

Plaintiff Sue Ellen Valeri is a resident of the Town/Village of Harrison, New York (hereinafter alternatively referred to as the "Town"). At the time of the events referenced *infra* two of Plaintiff's six children (one son and one daughter) attended the Louis M. Klein Middle School (hereinafter "Middle School") in the Harrison Central School District (hereinafter "District"). The Middle School has, over the years, lost a substantial number of faculty to cancer; a number of former Middle School students, currently enrolled in the District's High School, has also been diagnosed with cancer (Complt ¶2).

Defendant Anthony Marraccini (hereinafter "Marraccini"), who is sued in his personal and individual capacities only, at all times relevant was a Captain in the Police Department (hereinafter "Department") of the Defendant Town/Village of Harrison. As such and by reason of the complete and deliberate abdication of responsibility for the administration of that Department by its Chief of Police, its Board of Police Commissioners and the Town Board, Marraccini has exercised plenary, unbridled, final administrative decision-making authority over the Department and its officers - - commanding his subordinates to routinely violate the civil rights of Town residents, financially rewarding those officers who carry out his unlawful

1

directives and punishing those officers who, advocating obedience to the United States Constitution and their oaths of office, opposed him (Complt ¶4).

Defendant Edward Lucas (hereinafter "Lucas"), at all times relevant was a Detective in the Department who over the years has willingly carried out Marraccini's unlawful directives including those violative of Plaintiff's federally protected civil rights as set forth *infra* (Complt ¶5)

Defendant Mark DiGiacomo (hereinafter "DiGiacomo"), at all times relevant was a Police Officer in the Department who over the years has also willingly carried out Marraccini's unlawful directives including those violative of Plaintiff's federally protected civil rights as set forth *infra* (Complt ¶6).

Defendant Town/Village Of Harrison, New York (hereinafter "Town"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State (Complt ¶7).

On May 31, 2007, Plaintiff was notified by the Middle School's nurse that her twelve year old son, Alex was ill and wanted to speak with her on the telephone. Alex then explained to Plaintiff that he and other children in his classroom were sick and vomiting (Complt ¶8). Plaintiff responded to the Middle School where she smelled a foul odor and observed a number of children vomiting uncontrollably, a circumstance that she found particularly frightening in light of the School's history of cancer (Complt ¶ 9).

She immediately removed Alex from the premises at which time he reported to her that, following an announcement made over the Middle Schools public address system, the school's principal and vice principal raced into Alex' classroom where the Vice Principal directed that all children be immediately removed from the building - - only to be immediately countermanded

by the Principal who instead ordered that Superintendent of Schools Louis Wool (hereinafter "Wool") be notified. The premises were not evacuated (Complt ¶10). As a result of Alex' report to her, Plaintiff re-entered the Middle School, located her fourteen year old daughter and removed her from the premises as well (Complt ¶11).

Observing that there were no emergency services officials at the Middle School, Plaintiff contacted the local fire department and reported her observations out of concern for the health and safety of the school's children, faculty and staff. Firemen responded to the premises where Assistant Fire Chief Henry Mohr directed that, in light of the number of children vomiting and the foul odor, the building should be evacuated (Complt ¶12). Mohr was then promptly overruled by Fire Chief Ralph Straface - - who in addition to being a member of the Fire Department was a full-time Head Custodian employed by the District and subject to control by Wool - - who, because of the Middle School's history of cancer took immediate action to suppress any public reports regarding the incident which he determined to cover-up (Complt ¶13).

Alex, covered in a rash from head to toe, vomiting, suffering from a fever in excess of 103 degrees and experiencing difficulty breathing was taken by Plaintiff to his treating physician who *inter alia* directed Plaintiff to ascertain from the District what substance had caused the foul odor in the Middle School - - information that would be of assistance in determining: i) what Alex had been exposed to; ii) whether he had suffered an allergic reaction to such a substance; and iii) what course of treatment might be best indicated (Complt ¶14).

As a result Plaintiff repeatedly contacted officials of the District, both by telephone and in writing, expressing her concerns and seeking information regarding the source of the foul odor - - only to be ignored as part of Wool's cover-up (Complt ¶ 15). Believing that the District had

3

an obligation to disclose the information she was seeking, not only for the medical treatment of Alex but for the health and safety of all of the Middle School children, faculty and staff who had been exposed to the foul odor, Plaintiff notified the County Health Department and *inter alia* the New York State Department of Environmental Conservation to express her concerns and secure their intervention (Complt ¶16).

With the calculated objective of deceiving the parents of Middle School children, averting any competent investigation of the May 29, 2007, events and insulating the District from exposure to justifiable litigation regarding its deliberate disregard for health and safety, Wool: publicly, falsely announced that only two Middle School children had become sick as a result of the foul odor; publicly, falsely announced that there was no health and/or safety risk for the children, faculty and/or staff attending the Middle School; and publicly threatened to have the person who expressed concerns regarding the events of May 29th and the cover-up pertaining to it prosecuted criminally, an objective with respective to which Wool enlisted Marraccini's knowing, active, and corrupt support (Complt ¶17).

Shortly thereafter Marraccini began repeatedly telephoning Plaintiff on her cellular phone and harassing her regarding her expressions of concern as referenced *supra* [N.Y. Penal Law §240.30(1), Aggravated Harassment in the Second Degree]. In that connection he: i) interrogated her regarding those concerns without asking about her son's medical condition; ii) warned her, in response to Plaintiff's inquiry about what was being done to investigate the foul odor and the children's vomiting, that she did not realize what she was "getting into"; ii) threatened her, cautioning that if she continued to pursue the issues she was going to be in "big trouble" [N.Y. Penal Law §135.60(4), Coercion in the Second Degree; N.Y. Penal Law §195.00(1), Official

4

Misconduct]; iii) and advised her that he had to come to her home to speak with her. Out of fear Plaintiff stopped taking Marraccini's calls (Complt ¶18).

When Plaintiff's husband contacted Marraccini and instructed him cease calling Plaintiff, Marraccini directed Harrison Police Officer Gary Chiarella to make a series of telephone calls to Plaintiff's residence, speak to her children and repeatedly advise them that if Plaintiff did not return his calls she was going to be "in trouble" [N.Y. Penal Law §135.60(4), Coercion in the Second Degree; §240.30(1), Aggravated Harassment in the Second Degree]. Plaintiff's husband returned Chiarella's calls and was told by Chiarella: i) that Plaintiff's public expression of concern regarding the May 29th incident "needs to end now"; and ii) that if it does not, Plaintiff was going to be arrested [N.Y. Penal Law §195.00(1), Official Misconduct; §135.60(4), Coercion in the Second Degree] (Complt ¶ 19).

Lucas, at Marraccini's directive, then telephoned Plaintiff's husband and advised that if Plaintiff did not surrender herself at Police Headquarters she would be arrested in Town and publicly handcuffed [N.Y. Penal Law §195.00(1), Official Misconduct; §135.60(4), Coercion in the Second Degree]. As to her alleged crime, Lucas claimed without any basis in fact or law that, by reason of her expressions of concern regarding the May 29, 2007, incident at the Middle School and the District's cover-up she had filed a "false report" (Complt ¶20).

Because of Marraccini, Lucas and Chiarella's threats Plaintiff involuntarily surrendered to the Harrison Police where she was fingerprinted, subjected to the taking of "mug shots", and interrogated by DiGiacomo in the presence of Lucas (Complt ¶21). DiGiacomo then issued to her an appearance ticket charging her with Falsely Reporting an Incident in the Second Degree in violation of New York State Penal Law Section 240.55, a felony. Since that charge itself was

5

entirely false, by filing the appearance ticket DiGiacomo himself committed the crime of Falsely Reporting an Incident in the Second Degree (Complt ¶22).

As a result and commencing on or about July 27, 2007, Plaintiff was forced to retain defense counsel and make multiple court appearances in the Town's Justice Court with respect to a crime she did not commit. The charges were thereafter dismissed (Complt ¶23).

Defendants' conduct was motivated entirely and/or in substantial respect by their intent to: i) retaliate against Plaintiff for her non-disruptive expression of concern regarding the health and safety of Middle School children, staff and faculty and the District's cover-up; ii) and coerce her silence regarding this matter of grave public concern (Complt ¶24). By reason of Defendants' conduct Plaintiff was in fact chilled in the prospective exercise of her First Amendment rights with respect to the incident of May 29, 2007, and the cover-up by Wool and Marraccini (Complt ¶25).

## ARGUMENT

In a pre-discovery motion to dismiss, all well-pleaded facts must be accepted as true in the light most favorable to the plaintiff. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007). "In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane, *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Indeed, the Bell Atlantic ruling does not call for "a universal standard of heightened pleading, but is instead requiring a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(emphasis in original).

6

## POINT

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDMENT CHILLING CLAIM
## SHOULD BE DENIED

To state a chilling claim, Plaintiff must show that she: (1) had an interest protected by the First Amendment; (3) Defendants' actions were motivated by the exercise of that right; and (3) Defendants' actions effectively chilled the exercise of Plaintiff's First Amendment rights. Curley v. Suffern, 268 F.3d 65, 73 (2nd Cir. 2001), citing Connell v. Signoracci, 153 F.3d 74, 79 (2nd Cir. 1998).

### A. There is no dispute that Plaintiffs meet the first and second elements of their claim

Here, Defendants do not contest that Plaintiff's Complaint meets the first two elements for they concede that "[t]he Complaint in the instant matter satisfies the first two elements of the Curley test" (Defendants' Memorandum of Law p. 8).

### B. As plead in the Complaint, Plaintiffs' First Amendment rights have been unlawfully chilled

With respect to the third element, "it is well-established that 'First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech." Aebisher v. Ryan, 22 F.2d 651, 655 (2nd Cir. 1980). Accordingly, the First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" Zieper v. Metzinger, 474 F.3d 60, 65-66 (2nd Cir. 2007), quoting Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 39 (2d Cir.1983).

In the case at bar, Defendants did more than simply suggest to Plaintiff that adverse action would follow -- the Defendants carried out a series of actions meant to chill Plaintiff's exercise which is amply pled in the complaint. In that connection, Marraccini repeatedly telephoned Plaintiff and harassed her regarding her expressions of concern, including warning her that she did not realize what she was getting into when she asked about what was being done to investigate the foul odor and the children's vomiting and threatened her – cautioning that if she continued to pursue the issues she was going to be in big trouble.

After Plaintiff stopped taking Marraccini's calls, he (Marraccini) then enlisted Chiarella to make a series of telephone calls to Plaintiff's residence, speak to her children and repeatedly advised them that if she did not return his calls she was going to be "in trouble." Chiarella advised Plaintiff's husband that her expressions of concern needed to end immediately and if they did not Plaintiff was going to be arrested (Complt. ¶19).

That situation did not end for Defendants made good on their threats. At the behest of Marraccini, Lucas then contacted Plaintiff's husband and advised if she did not surrender at Police Headquarters, she would be arrested in Town and publicly handcuffed (Complt. ¶21). Because of Defendants' threats, Plaintiff was forced to surrender at the station where she was fingerprinted, subjected to the taking of "mug shots" and interrogated by DiGiacomo (Complt ¶21). DiGiacomo then issued an appearance ticket charging her with Falsely Reporting an Incident in the Second Degree which is a felony. Thereafter Plaintiff was forced to retain defense counsel and make multiple court appearances with respect the charge which was thereafter dismissed.

Plaintiff amply alleged that the multiple communications by Defendants threatening her and thereafter arresting her and issuing an appearance ticket falsely charging her with a felony

8

was motivated "entirely and/or in substantial respect by their intent to: 1) retaliate against Plaintiff for her non-disruptive expression of concern regarding the health and safety of Middle school children, staff and faculty and the District's cover-up, and ii) and coerce her silence regarding the matter of public concern" (Complt ¶ 24).

Contrary to Defendants' claims (Memorandum of Law p. 9), it is further sufficiently alleged that by reason of Defendants' conduct, Plaintiff was in fact chilled in the prospective exercise of her First Amendment rights with respect to the incident of May 29, 2007 and the cover-up by Wool and Marraccini (Complt. ¶25). *See* Dombrowski v. Pfister, 380 U.S. 479, 486-487, 85 S.Ct. 1116 (1965)(official threats to institute criminal proceedings resulted in chilling of the exercise of First Amendment Rights); *see also* Kerman v. City of New York, et al., 261 F.3d 229, 242 (2d Cir. 2001) (police officers' transportation of plaintiff to psychiatric ward in retaliation for his derogatory remarks and threats to sue them "has an obvious chilling effect").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in all respects.

Dated: White Plains, NY
       August 18, 2008

                LOVETT & GOULD LLP

                By: _/s/ Drita Nicaj_
                Drita Nicaj (DN 0966)
                Attorneys for Plaintiffs
                222 Bloomingdale Road
                White Plains, NY 10605
                (914) 428-8401